# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

**In the Matter of the Search of**                    )
                                                       )
A white I-Phone smaller in size with a model number on )
the   back   listed   as   A1532   with   IMEI   of    )
358820052781340.                                       )

**FILED**

JUL 1 7 2018

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

Case No. 4:18 MJ 1293 (JMB)

## APPLICATION FOR A SEARCH WARRANT

I, _CHRISTOPHER GRIMM_, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

**a white I-Phone smaller in size with a model number on the back listed as A1532
with IMEI of 358820052781340,**

located in the _____ EASTERN _____ District of _____ MISSOURI _____, there is now concealed
see attached LIST.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

✓ evidence of a crime;

✓ contraband, fruits of crime, or other items illegally possessed;

✓ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., §§ 846, 841(a)(1) | Conspiracy to possess with intent to distribute controlled substances |
| Title 18, U.S.C., § 924(c) | Possession of a firearm in furtherance of a drug trafficking crime |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

✓ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

CHRISTOPHER GRIMM, Special Agent
Drug Enforcement Administration
*Printed name and title*

**Sworn to before me and signed in my presence.**
Date: _____ July 18, 2018 _____

_____
*Judge's signature*

City and State:  _____ St. Louis, MO _____

Hon. John M. Bodenhausen, U.S. Magistrate Judge
*Printed name and title*
AUSA:   BETH ORWICK

## AFFIDAVIT

Christopher M. Grimm, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

### Introduction

I have been employed with the Drug Enforcement Administration (DEA) since September 2010, and I am currently assigned to an Enforcement Group of the St. Louis Division Office. Prior to my assignment to the St. Louis Division Office, I was assigned to the Bakersfield Resident Office in the San Francisco Field Division in California. Prior to my employment with the DEA, I was a police officer and detective for the St. Louis County Police Department for approximately six years. During the course of my law enforcement experience, I have participated in numerous investigations involving controlled substances. I have conducted investigations of a variety of illegal drug-trafficking and money-laundering organizations. I have participated in investigations that led to the seizure of illegal drugs, weapons, and assets derived from the sale of illegal drugs, and the subsequent felony arrests of those individuals involved. I have participated in numerous drug-related training courses throughout my law enforcement career. I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to search the two **subject electronic devices** located in the stolen vehicle that was abandoned by Jimmie PAMPKIN

1

(hereinafter Jimmie PAMPKIN 98)[1] following a pursuit by law enforcement.

**Subject electronic device #1: A white I-Phone smaller in size with a model number on the back listed as A1532 with IMEI of 358820052781340. This subject electronic device was located in a stolen vehicle that was abandoned by Jimmie PAMPKIN 98 following a pursuit by law enforcement.** A photo of **subject electronic device #1** is attached and labeled as Exhibit A.

**Subject electronic device #2:   A white I-Phone larger in size with an "s" on the back in size with a model number on the back listed as A1687. This subject cellular telephone was located in a stolen vehicle that was abandoned by Jimmie PAMPKIN 98 following a pursuit by law enforcement.** A photo of **subject electronic device #2** is attached and labeled as Exhibit B.

Both **subject electronic device #1** and **subject electronic device #2** (hereinafter **subject electronic devices)** are in the custody of the DEA and located at the St. Louis DEA Field Office in the City of St. Louis, within the Eastern District of Missouri.

Specifically, there is probable cause to believe that the **subject electronic devices** contain evidence, fruits and instrumentalities of violations of:   Title 21 U.S.C. §§ 841(a)(1), 846 (possession with intent to distribute narcotics and conspiracy to distribute narcotics), Title 18 U.S.C. §924(c) (possession of a firearm in furtherance of a drug trafficking crime), and Title 18 U.S.C. §36 (Drive-by shooting).  These violations have been committed by persons known and as yet unknown to the investigation.

The facts alleged in this affidavit come from my own investigation, my training and

---

[1] Jimmie PAMPKIN 98 and Jimmie PAMPKIN 95 are believed to be brothers with the same name; therefore, they will be referred to in this affidavit by their name and birth year.

experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to search the **subject electronic devices** as part of a criminal investigation, it does not set forth all of my knowledge regarding this matter, and sets forth only those facts believed necessary to establish probable cause that violations of Title 21 U.S.C. §§ 841(a)(1), 846, 843(b), Title 18 U.S.C. §36, have occurred, are occurring, and will occur.

## INFORMATION/ITEMS TO BE SEIZED FROM THE SUBJECT ELECTRONIC DEVICES

The following are the information/items to be seized from the **subject electronic devices** which I believe constitute further evidence of violations of the aforementioned subject offenses: information or data stored electronically relating to the target offenses, including dialed-call telephone numbers; received-call telephone numbers; missed-call telephone numbers; names, telephone numbers, addresses, and other data located in the address books of contacts databases; photographs and/or videos; voicemails; emails and text messages stored and/or removable SIM cards, and/or removable data boards, and data stored on the **subject electronic devices**.

## PROBABLE CAUSE

### *Background*

The undersigned is presently investigating narcotics trafficking as well as acts of violence between the 27 Accomac Crips gang (hereinafter 27 Mac) and rival gang the Grape Street Crips. 27 Mac and the Grape Street Crips are engaged in an ongoing turf war over narcotics trafficking territory. In addition, there have been frequent shootings and murders of members of both gangs in retaliation and in attempts to gain control of areas for narcotics distribution. As part of this investigation into the two rival street gangs, investigators have observed techniques and patterns

3

used by street level gangs in their narcotics trafficking. Some of these patterns include the use of stolen vehicles for narcotics sales and drive-by shootings, stolen plates, stash locations for narcotics and firearms, social media usage for narcotics distribution, cell phone usage, and other techniques and patterns described in the below affidavit. PAMPKIN 98 is a known affiliate of the 27 Mac gang.

On July 9, 2017, Shemarcus McCullough, who was a member of the Grape Street Crips gang, was shot and killed as he was driving on Highway 44 in Webster Groves. Investigators later determined that, Amontae GORDON, Robert WHITE JR, Jimmie PAMPKIN 95, and other unknown 27 Mac members, were present at the Six Flags theme park with McCullough prior to the shooting. The 27 Mac members left in separate vehicles and were on the same highway and travelling in the same direction as McCullough at the time of his murder.

On October 3, 2017, investigators received authorization to begin intercepting the electronic communications of a cellular number (314-399-2816) utilized by Jimmie PAMPKIN 95, Jimmie PAMPKIN 98, and other members of the 27 Mac gang.

On October 4, 2017, 27 Mac member Robert White Jr. was murdered in East St. Louis. White was also present at Six Flags with several other members of the 27 Mac gang just prior to McCullough's murder.

On October 5, 2018, investigators thwarted a drive-by shooting in the area 27 Mac claims as their territory. On that date, investigators intercepted several calls with PAMPKIN 95 and fellow 27 Mac gang member Isaiah CHATMAN. During these calls, CHATMAN and PAMPKIN 95 organized a drive-by shooting of rival gang member Keith MILES and William REID in retaliation for the murder of Robert WHITE. Investigators flooded the area where CHATMAN was located with marked units and conducted surveillance on the 27 Mac members. Investigators

4

observed PAMPKIN 95 at an address on Kenwood.  Investigators observed 27 Mac gang members, armed with rifles and handguns; enter into a blue Ford Fusion with tinted windows.  Investigators followed this vehicle to the area where CHATMAN said the victims were located on the intercepted call.   Investigators attempted to stop the Ford Fusion, which fled from law enforcement. Subsequent intercepted calls indicated that the occupants of the Ford Fusion, occupied by 27 Mac gang members, were armed.  The Ford Fusion was later used by PAMPKIN 98 in a shooting that occurred on October 16, 2018, as described below.

On October 6, 2018, two individuals were shot in a drive-by shooting in the same area as the thwarted attempt the day before. Investigators believe 27 Mac members are responsible for that shooting.

<u>**Oakwood Shooting**</u>

On October 16, at approximately 10:30 AM, two men were injured in a drive-by shooting at 4330 Oakwood Ave, in St. Louis County, Missouri.  The victims were interviewed by investigators and provided a description of the men and the vehicle used in the shooting; notably the victims described that a dark colored possibly blue four-door sedan vehicle drove past them once and returned minutes later and started shooting.

On October 16, 2017, at approximately 1:37 PM, investigators intercepted a call between 314-399-2816 (the Target Telephone of the Title III order referred to previously) and 314-398-5161, which has been identified as the cellular device used by Anteaus **CAYODE**.  Investigators believe that **CAYODE** is **PAMPKIN 95's** girlfriend.  The following is a synopsis of call #1297:

- **PAMPKIN 95**:        [U/I]
- **CAYODE**:        Hello...
- **PAMPKIN 95**:        Hello. Where you at?

5

- **CAYODE**:        At the top of the street...

- **PAMPKIN 95**:     I need to go pick Lil Nut (AKA PAMPKIN 98), they high
                     speeding somewhere.

- [BACKGROUND: UF: (U/I)]

- **CAYODE**:        Alright... where they at?

- [BACKGROUND: UF: (U/I)]

- **PAMPKIN 95**:    I don't know I'm trying to hear.... hello...

- **CAYODE**:        Yeah.

- **PAMPKIN 95**:     I'm trying to talk him on my other phone...

- **CAYODE**:        Why you ain't call Roe phone?

- **PAMPKIN 95**:    Cause she on the phone with... she on Lil Nut's phone, I'm
                     on my other phone... she got the phone here and trying to
                     run. I hear her talking... I think [U/I] hid and shit...
                     [LAUGHS]

- **CAYODE**:        Huh? [U/I]

- **PAMPKIN 95**:    Hello...

- **CAYODE**:        Yeah.

- **PAMPKIN 95**:    Yeah, I don't know where the fuck they at, I know they was
                     high speeding at [U/I] when he call and I hear all static...

- **CAYODE**:        I'm finna try and call'em.

- **PAMPKIN 95**:    Alright.

Investigators believe that when PAMPKIN 95 states, "I need to go pick Lil Nut, they high
speeding somewhere," that PAMPKIN 95 is informing CAYODE that PAMPKIN 98 was involved
in a high speed chase with law enforcement, escaped, and needs to be picked up. Investigators
conducted a check of local law enforcement in the area and confirmed that officers from the North

County Cooperative Police Department had been involved in a pursuit of a blue Ford Fusion that was wanted in connection with a drive-by shooting on Kenwood that morning, during which two individuals were shot in Pine Lawn, Missouri. Detectives from the North County Police Cooperative indicated that during the pursuit, the vehicle crashed near the intersection of Dr. Martin Luther King Blvd. and Belt Avenue, in St. Louis City, and that a female and male had fled from the car. Detectives indicated that the female was taken into custody and identified as Ronesha PAMPKIN. The male had been pursued by law enforcement through several yards and bitten by a police K-9 before officers lost the suspect in the area. Investigators were able to confirm that Ronesha PAMPKIN is the sister of PAMPKIN 95 and PAMPKIN 98. Investigators were also provided with a photograph of the stolen blue Ford Fusion. Investigators observed that the Fusion in the photograph appeared to be the same vehicle that investigators observed during the surveillance and violence prevention attempt by investigators on October 5, 2017 (described above).

On October 16, 2017, at approximately 1:45 PM, investigators intercepted a call between 314-399-2816 (the Target Telephone of the Title III order referred to previously) and 314-398-5161, which has been identified as the cellular device used by Anteaus CAYODE. The following is a synopsis of call #1302:

- **PAMPKIN 95**:    Hello.

- **CAYODE**:    Yeah.

- **PAMPKIN 95**:    You got'em [U/I], Tootie?

- **CAYODE**:    Nah, they ain't answer.

- **PAMPKIN 95**:    Ah, shit, let me... I was, I was trying call, Roe too. Let me call you right back.

- **CAYODE**:    Her phone dead.

7

- **PAMPKIN 95**:     You call Lil Nut's (AKA PAMPKIN 98) phone?

- **CAYODE**:     Huh?

- **PAMPKIN 95**:     I just called Lil Nut's phone he ain't answer.

- **CAYODE**:     Yeah, he is not answering n' Roe phone dead.

     [BACKGROUND: UM: he ain't answering though (U/I)]

- **PAMPKIN 95**:     A Roe, a Roe got Lil Nut's phone though.

- **CAYODE**:     I'm calling, then I text' em and they ain't answer. Try to call' em.

Investigators believe that when PAMPKIN 95 asks CAYODE, "Ah, shit, let me... I was, I was trying call, Roe too. Let me call you right back," that PAMPKIN 95 is telling CAYODE that he tried to contact Ronesha PAMPKIN following the chase and that her phone is dead. PAMPKIN 95 goes on to ask CAYODE, "You call Lil Nut's phone?" Investigators believe that PAMPKIN 95 was asking CAYODE if she had been able to contact PAMPKIN 98.

On October 16, 2017, at approximately 3:53 PM, investigators intercepted a between PAMPKIN 98 speaking on 314-399-2816 (the Target Telephone of the Title III order referred to previously) and "Monisha" speaking on 314-201-4407. The following is a synopsis of call #1322:

- **MONISHA**:     Hello.

- **PAMPKIN 98**:     Hello, baby...

- **MONISHA**:     Hello...

- **PAMPKIN 98**:     [U/I] you hear me?

- **MONISHA**:     No...

- **PAMPKIN 98**:     You can, you can hear me...?

- **MONISHA**:     Who is this?

| | | |
|---|---|---|
| - | **PAMPKIN 98**: | (name redacted) ah... |
| - | **MONISHA**: | Well yeah, what's up? |
| - | **PAMPKIN 98**: | [U/I] gone, bruh, I got on a high speed with Roe... the dogs bit me up and everything. |
| - | **MONISHA**: | Where you at? |
| - | **PAMPKIN 98**: | At my brother house, bruh? And Roe locked up, I hope, I hope she hid the gun... |
| - | **MONISHA**: | You said she hid it? |
| - | **PAMPKIN 98**: | I hope she did. They can't catch me though. Where you at? |
| - | **MONISHA**: | Outside. |
| - | **PAMPKIN 98**: | Why you ain't at your house? |
| - | **MONISHA**: | I am... |
| - | **PAMPKIN 98**: | [U/I] you said what Monisha? |
| - | **MONISHA**: | I am... |
| - | **PAMPKIN 98**: | Where your house at? |
| - | **MONISHA**: | I told you already boy. |
| - | **PAMPKIN 98**: | I'm coming over later when I heal up. I'm coming over... 'cause you gotta baby me. Okay? |
| - | **MONISHA**: | Yeah, I hear you. |
| - | **PAMPKIN 98**: | I'ma call you when I'm coming. I'm with my brother Jo... I'm with my brother, alright? |
| - | **MONISHA**: | You say you lost your phone? |

Investigators were able to compare previous intercepted calls involving PAMPKIN 95 and PAMPKIN 98 to determine that in the above call PAMPKIN 98 is using 314-399-2816 to speak to an unidentified female known only as "Monisha." Investigators believe that when PAMPKIN

9

98 tells Monisha, "[U/I] gone, bruh, I got on a high speed with Roe... the dogs bit me up and everything." That PAMPKIN 98 is confirming that he and Ronesha PAMPKIN were the individuals involved in the pursuit. Investigators believe that when MONISHA asks PAMPKIN 98 "Where you at?" and PAMPKIN 98 states, "At my brother house, bruh? And Roe locked up, I hope, I hope she hid the gun," that PAMPKIN 98 is confirming that he and Ronesha PAMPKIN were in possession of a firearm during the pursuit.

Following the car chase, Ronesha PAMPKIN was taken into custody while Jimmie PAMPKIN made his escape. Investigators learned that North County Cooperative Police Department seized two cellular phones from the interior of the Ford Fusion following the flight from law enforcement.

Detectives from the North County Cooperative Police Department conducted an interview of Ronesha PAMPKIN following the chase during which time she admitted that she had been in the car with her brother PAMPKIN 98 and fellow gang member Derrick HUDSON prior to the shooting and that they had driven by the victims and overheard PAMPKIN 98 state that "that looks like those nigger." Ronesha PAMPKIN stated that immediately after that exchange, PAMPKIN 98 drove directly to PAMPKIN 95's girlfriend's house located at 6657 Kenwood and requested Ronesha PAMPKIN exit the car. Ronesha PAMPKIN stated that she then saw PAMPKIN 98 make a U-turn and travel back in the direction of where the victims had been standing. Ronesha indicated that both HUDSON and PAMPKIN 98 were armed with handguns at the time she exited the vehicle. The distance between 6657 Kenwood and 4300 Oakwood (approximate area where the victims were shot) is . 8 miles.

On June 25, 2018, investigators received the completed report from the North County Police Cooperative. Investigators learned that North County Cooperative detectives seized the

10

**subject electronic devices** from inside the stolen Ford Fusion following the pursuit. Investigators with the North County Police Cooperative maintained care, custody and control of the **subject electronic devices. Investigators confirmed with** North County Police Cooperative  that they had no record of any person requesting the return of the **subject cellular devices.** On July 16, 2018, the North County Cooperative transferred custody of the **subject electronic devices** to the Drug Enforcement Administration St. Louis Field Division.

Investigators believe, due to the past practices of the 27 Mac gang and their use of cell phones to conduct narcotics trafficking and coordinate and plan acts of violence, that the subject electronic devices will have information relevant to the ongoing investigation in the 27 Mac gang's acts of violence and narcotics related activities.

## TECHNICAL TERMS

Based on my training and experience, I use the following technical terms to convey the following meanings:

      a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b. Digital camera: A digital camera is a device that records still and moving images digitally. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage

medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

Based on my training, experience, and research, I know that the **subject electronic devices** have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device in furtherance of the trafficking of narcotics and/or firearms.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

*Forensic evidence.* This application seeks permission to locate not only electronically stored

12

information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **subject electronic devices** were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **subject electronic devices** because:

> a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
>
> b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
>
> c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.
>
> d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.
>
> e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

*Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

*Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion

13

onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based on previous gang investigations agents are aware that gangs will often attempt to insulate themselves from law enforcement while trafficking narcotics or committing other crimes. Investigators have observed gang members in the St. Louis area utilize out of state cellular numbers, cell phones used by multiple members of the gang, stolen vehicles, stolen plates, stash locations for narcotics and firearms, third party individuals to rent vehicles and houses for them, and social media platforms to facilitate and protect their gang's illegal activities. Investigators are also aware that often gangs will utilize residences to store firearms or bags and kits that contain firearms, changes of clothing, gloves, and masks, so that they can be grabbed and loaded in a vehicle to quickly conduct acts of violence or retaliation on rival gang members.

Investigators have established that PAMPKIN 98 is a member of the 27 Mac gang and that he distributes heroin and methamphetamine, conducts acts of violence against rival gang members, and communicate on social media posting and live streaming threats from their cellular devices.

Investigators believe that PAMPKIN 98, and other unknown members of the 27 Mac gang, utilized **subject eectronic device #1** and **subject electronic device #2** in furtherance of their narcotics trafficking, drive-by shootings, and the sale and trade of firearms. Investigators are aware that during the case members of the 27 Mac gang have utilized multiple phones for narcotics sales. Investigators believe that based on the fact that **subject electronic device #1 and subject electronic device #2** were abandoned in the stolen vehicle by PAMPKIN and no claim was made by Ronesha following her arrest that **subject electronic device #1 and subject electronic device #2** are possibly additional phones utilized by PAMPKIN (98).

14

Your affiant submits this affidavit in support of search warrants for the **subject electronic device #1 and subject electronic device #2** which are within the jurisdiction of the reviewing Court. I have reviewed the descriptions of **subject electronic device #1 and subject electronic device #2**, and believe them to be an accurate, particularized description for each.

From the information set forth, I believe that evidence as set forth in the attached "list" is contained within the above locations and that said items constitute evidence of narcotics trafficking and firearms storage.

Based in this information investigators believe that there is probable cause that evidence of the shooting, evidence of narcotics sales, and firearms sales will be located in **subject electronic device #1 and subject electronic device #2**

## REQUEST FOR SEALING

In view of the ongoing nature of the investigation, and the risk of harm to informants, cooperating witnesses, to agents, and to the investigation, which would exist should the information in this affidavit be prematurely disclosed, I respectfully request that this affidavit and associated records concerning this search be sealed until further order of the Court.

7/17/18
DATE

Christopher Crimm
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this _17_ day of July , 2018.

JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

15

## EXHIBIT A

**Subject electronic device #1:** **A white I-Phone smaller in size with a model number on the back listed as A1532 with IMEI of 358820052781340. This subject electronic device was located in a stolen vehicle that was abandoned by Jimmie PAMPKIN 98 following a pursuit by law enforcement.** A photo of subject **electronic device #1** is attached and labeled as <u>Exhibit A</u>.



## EXHIBIT B

**Subject electronic device #2:   A white I-Phone larger in size with an "s" on the back in size with a model number on the back listed as A1687. This subject cellular telephone was located in a stolen vehicle that was abandoned by Jimmie PAMPKIN 98 following a pursuit by law enforcement.** A photo of subject **electronic device #2** is attached and labeled as Exhibit B.



## LIST OF INFORMATION/ITEMS TO BE SEIZED

1.    All records on the **subject electronic device** as detailed in the Affidavit, the evidence, fruits, and instrumentalities or things otherwise criminally possessed, derived, that are evidence of, or which have been intended for use as, the means of committing violations of the subject offenses; including dialed-call telephone numbers; received-call telephone numbers; missed-call telephone numbers; names, telephone numbers, addresses and other data located in the address books or contacts databases; photographs; voicemails; emails and text messages stored, and/or removable SIM cards, and/or removable data cards, and data stored, audio/video files, including but not limited to the following:

     a.    lists of customers and related identifying information;

     b.    types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

     c.    any information related to firearms and acts of violence (including names, addresses, telephone numbers, or any other identifying information);

     d.    any information recording PAMPKIN 98 or any identified and unidentified co-conspirator's schedules or travel to include any GPS data saved or stored on the devices to be searched;

     e.    all bank records, checks, money orders, credit card bills, account information, and other financial records;

     f.    images or video regarding the possession or use of firearms or narcotics or any related financial transactions.

2.    Evidence of user attribution showing who used or owned the subject cellular devices to be searched at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    Records evidencing the use of the Internet to communicate via email, social media websites, or other electronic means, regarding customer purchases, shipments, financial transactions, including:

     a.    records of Internet Protocol addresses used;

     a.    records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4.      As used above, the terms "records" and ·'information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

5.      All data files, including but not limited to, records and graphic representations, containing matter pertaining to the possession or use of firearms or the manufacture or trafficking in controlled substances or controlled substance analogs, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

6.      Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the possession or use of firearms or the manufacture and distribution of controlled substances and controlled substance analogs and the laundering of proceeds of the same.

7.      Electronic mail, chat logs, Internet Relay Chat (JRC) log files and electronic messages, concerning the possession or use of firearms or the trafficking of controlled substances and controlled substance analogs through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogs and the laundering of proceeds of the same.

8.      Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the possession or use of firearms or the manufacture and distribution of controlled substances and controlled substance analogs and the laundering of proceeds of the same.

9.      Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the possession or use of firearms or the manufacture and distribution of controlled substances and controlled substance analogs and the laundering of proceeds of the same.